**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOHN NYAKUNDI OMARI,** | **)** | |
| **A# 28 989 663 ,** | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **3:05-CV-0397-P** |
| | **)** | |
| **ALBERTO R. GONZALES, U.S. Attorney** | **)** | |
| **General, et al.,** | **)** | |
| **Defendants.** | **)** | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the District Court in implementation thereof, this action has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a mandamus action brought by an alien detainee seeking *inter alia* judicial review of the denial of his second application for naturalization.[1]

Parties: Plaintiff is presently incarcerated at the Rollins Plains Detention Center in

---

[1] This action was filed initially in United States District Court for the District of Minnesota as a petition for writ of mandamus. Omari v. Ashcroft, Civil Action No. 04-1740. It was subsequently construed as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and transferred to this Court because Plaintiff is, and was at the commencement of this action, a resident of the Northern District of Texas. Id., Report and Recommendation of the magistrate judge at 3-9, filed on January 20, 2005, and adopted February 18, 2005.

Plaintiff's 2003 removal proceedings were conducted in Dallas, Texas. A petition for review stemming from those proceedings was filed in and recently decided by the Fifth Circuit. See Omari v. Gonzales, ___ F.3d ___, 2005 WL 1714364 (5th Cir. Jul 25, 2005).

Haskell, Texas. Named as Defendants are Alberto R. Gonzales, U.S. Attorney General; Tom Ridge, former Secretary of Homeland Security; Michael Garcia, Assistant Secretary for the Bureau of Immigration and Customs Enforcement (BICE); and an unnamed District Director for BICE. The court has issued process in this case.

Statement of Case: Plaintiff seeks judicial review of the denial of his application for naturalization. In the event, the Court were to conclude that the former Immigration and Naturalization Service (INS) erred in denying his application, Plaintiff requests the Court to compel the Attorney General to grant him his United States citizenship. (Petition for writ of mandamus (Pet.) at 3). Alternatively, he seeks to compel Defendants to grant his United States Citizenship on equitable grounds, and to estop his removal because he is now a United States National. (Pet. at 6-7).[2]

In response to this court's order requiring a response filed on March 2, 2005, Defendants filed a motion to dismiss along with an appendix. Plaintiff filed his response to the motion to dismiss, to which Defendants filed a reply.

The procedural history of Plaintiff's case is as follows:

Plaintiff a native and citizen of Kenya, entered the United States in 1986 on a student visa. (Pet. at 4 and 5). On March 23, 1990, he became a lawful permanent resident of the United States. (Defendants' Mot. to Dism. at 1). He, thereafter, unsuccessfully applied for naturalization on two occasions. He concedes the pending action relates only to the denial of his second application for naturalization, filed on February 20, 1996, and denied on April 2, 1997.

[2] The decision of the Fifth Circuit has effectively foreclosed Petitioner's removal pending further review by the Board of Immigration Appeals (BIA). See note 1 *supra*.

(Plaintiff's Response at 6, and Defendants' Appx. B).[3]

On May 1, 1997, Plaintiff timely sought administrative review of the denial of his second application, by filing a Request for Hearing under Section 336 of the Immigration and Naturalization Act (INA) (Form N–336). (Defendants' Appx. B). At a hearing held on May 12, 1998, an immigration officer requested that additional documents and information be submitted within thirty days, including certified copies of arrest records, court proceedings and final disposition. (Id.). Contemporaneously with the request for additional documents, Plaintiff was convicted in the State of Minnesota for domestic assault and placed on probation for two years. See Omari v. Ridge, 3:04cv1980-B (N.D. Tex., Dallas Div.) (findings, conclusions and recommendation filed on Jan. 21, 2005, and adopted Feb. 28, 2005). It appears that, as a result of his domestic assault conviction, Plaintiff failed to provide the requested documents, which led the INS to deny the second application for naturalization for failure to submit the documentation requested on August 5, 1998. (Defendants' Appx. B at 9).

While serving his two-year term of probation for the Minnesota assault conviction, Plaintiff was indicted in the United States District Court for the Eastern District of Texas for conspiracy to commit interstate transportation of stolen property. See Omari v. Ridge, 3:04cv1980-B (N.D. Tex., Dallas Div.) (findings, conclusions and recommendation filed on Jan. 21, 2005, and adopted Feb. 28, 2005). On October 23, 2001, following his plea of guilty,

[3] The INS denied the first application for naturalization without prejudice, concluding Plaintiff was not a person of good moral character because he twice gave false testimony at his examination, and bribed his wife to write a letter containing false information regarding his marital status. (Defendants' Appx. A). The INS denied the second application because Plaintiff again gave false testimony at his examination before an immigration officer. (Defendants' Appx. B).

Plaintiff was sentenced to six months confinement and restitution in the amount of $16,336.48. Id. The next day, the INS initiated removal proceedings, which appear to be the sole basis for Plaintiff's present confinement. Id. An immigration judge thereafter issued an order of removal, which the Board of Immigration Appeals affirmed on November 3, 2003. Id. at 2-3. Plaintiff then filed a petition for review, which was addressed in the Fifth Circuit opinion issued on July 25, 2005. See Note 1, *supra*.

    Findings and Conclusions:  Plaintiff invokes this Court's jurisdiction under "28 U.S.C. § 1331 (federal subject matter jurisdiction) in conjunction with 28 U.S.C. § 1361 (mandamus jurisdiction), and 28 U.S.C. § 2201 (jurisdiction to render declaratory judgments). (Pet. at 3). He requests judicial review of the denial of his second application for naturalization. He also requests the Court to review the INS's delay in processing his second application for naturalization, and his request for administrative review before a second immigration officer. (Plaintiff's Response at 6, 10-12).

    The immigration statutes create two specific circumstances in which a district court may intervene in the naturalization process. First, if the former INS or the current Bureau of Citizenship and Immigration Services (CIS) fails to render a decision upon an application within 120 days of the applicant's naturalization examination, the applicant may apply to the district court for the district where he resides to conduct a *de novo* hearing on the application, and the court may then either determine the matter for itself or remand to the CIS with instructions. 8 U.S.C. § 1447(b) (West 2005); 8 C.F.R. § 310.5. Second, if CIS denies a naturalization application – and that denial has been confirmed after an administrative appeal, consisting of a hearing before a senior naturalization officer – the rejected applicant may seek *de novo* judicial

review of the denial in the United States district court for the district in which he resides. 8 U.S.C. § 1421(c) (West 2005).

The first opportunity for judicial review does not exist in this case. On April 16, 1996, Plaintiff was examined by an INS officer in connection with his second application for naturalization. Almost one year later, on April 2, 1997, the INS denied his application. The delay alleged in the petition, pre-dated the filing date of this action. While INS clearly took longer than 120 days to make a decision, a determination was eventually issued and thus jurisdiction cannot be based on this premise. Langer v. McElroy, 2002 WL 31789757, *3 (S.D.N.Y. Dec. 13, 2002).[4]

The second opportunity for judicial review of the denial of an application for naturalization is equally unavailable in this case. Under section 1421, administrative review of naturalization denials is a prerequisite for judicial review. See 8 U.S.C. § 1421(c) (West 2005) (requiring "a hearing before an immigration officer" as a condition precedent to seeking judicial review in a district court); see also 3C AM.JUR.2D ALIENS AND CITIZENS § 3002 (2003) (finding that a naturalization denial is "not subject to judicial review until the applicant has exhausted those statutory administrative remedies available to the applicant"). Interpreting this section, the Fifth Circuit recently stated in Aparicio v. Blakeway:

> Applicants may only appeal to the district court ... if they either sought

---

[4] Plaintiff also requests judicial review of the administrative delay following the filing of form N–336. Specifically he alleges that “it took the Respondents more than 120 days to grant [him] an administrative hearing on his second application for naturalization” -- i.e., from May 1, 1997, the date of filing of form N-336, until May 12, 1998, the date of the hearing before the immigration officer. (Pet’s Resp. at 12). Both the hearing on May 12, 1998, and denial of his appeal on procedural grounds pre-dated the filing of this action and therefore jurisdiction under § 1447(b) is lacking.

> administrative review and the application was again denied, or if they sought administrative review and the review was delayed for more than 120 days.

302 F.3d 437, 440 (5th Cir. 2002) (citation omitted); see also Levy v. Davis, 83 Fed. Appx. 602, 2003 WL 22903857 at *1 (5th Cir. 2003) (per curiam) (finding that the district court was without jurisdiction to review the denial of plaintiff's application for naturalization where he failed to comply with the applicable regulations for obtaining an immigration hearing); Chavez v. INS, 844 F. Supp. 1224, 1225 (N.D. Ill. 1993) (stating that Congress did not intend "to permit a district court to circumvent the appeals process provided for by statute").

In this case, after the INS denied the second application for naturalization, Plaintiff timely submitted a request for administrative review of the denial of his naturalization application, pursuant to 8 U.S.C. § 1447(a). (Defendants' Appx. B). He appeared before a second immigration officer and gave sworn testimony on May 12, 1998. (Id.). The officer than requested that additional information/documents be submitted within the next thirty days. (Id.). The May 12, 1998 letter, confirmed in writing the request for additional documents and specifically placed Plaintiff on notice that denial for want of prosecution would result if he failed to furnish the requested documents. (Id. at Letter dated May 12, 1998). Plaintiff alleges that he previously "supplied all the relevant documents that were required by the service to make a decision on his second Application for Naturalization." (Plaintiff's Response at 7). In support, he states that in 2003 his INS file contained all requested documents as confirmed by copies received in response to a mandamus action which compelled the INS to comply with his Freedom of Information Action request. (See id. at 7 and n. 3, citing to Omari v. Ashcroft, 1:04cv104-C (N.D. Tex.)). Regardless of what Plaintiff's INS file contained in 1998 or 2003, it is undisputed that he had notice that additional documents were requested and that he failed to

comply with that request. Accordingly, the INS was justified in denying his application on procedural grounds without reaching the merits of his request for administrative review.

Because Plaintiff failed to comply with the request for information and documents, and his failure resulted in the denial of his application for want of prosecution, he has not adequately exhausted the administrative remedies available to him and has not satisfied the jurisdictional prerequisite of 8 U.S.C. § 1421(c). See Barnes v. Levitt, 118 F.3d 404, 408 (5th Cir. 1997) (citing Johnson v. Bergland, 614 F.2d 415, 418 (5th Cir. 1980) ("If the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures the Court should not reach the merits either.")). Where, as here, exhaustion of administrative remedies is required by statute, exhaustion is jurisdictional and must be enforced. See McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L.Ed.2d 291 (1992) (interpreting pre-PLRA version of 42 U.S.C. § 1997e).[5]

In addition to seeking judicial review, Plaintiff requests mandamus and equitable relief. He seeks an order compelling Defendants to administer a naturalization oath. The Mandamus Act vests district courts with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, mandamus may only be invoked in extraordinary situations. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S. Ct. 188, 190, 66 L.Ed.2d 193 (1980). Mandamus relief is appropriate "only when the plaintiff's claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free

---

[5] In light of Plaintiff's failure to exhaust, the court need not address Defendants assertion that 8 U.S.C. § 1429 divests this court of "jurisdiction to grant naturalization while removal proceedings are pending." (Defendants Reply at 3).

from doubt." Giddings v. Chandler, 979 F.2d 1104, 1108 (5th Cir. 1992); see also Davis v. Fechtel, 150 F.3d 486, 487 (5th Cir. 1998).  A Plaintiff must establish: (1) that he has a clear right to have his naturalization oath administered; (2) that defendants have a nondiscretionary duty to administer his naturalization oath; and (3) that he has no other adequate remedy.  See Allied Chemical, 449 U.S. at 35, 101 S. Ct. at 190 (party seeking mandamus relief must show "clear and indisputable" right and have no other adequate remedy); In re Stone, 118 F.3d 1032, 1034 (5th Cir. 1997) (same); Dunn-McCampbell Royalty Interest, Inc. v. National Park Service, 112 F.3d 1283, 1288 (5th Cir. 1997) (duty must be for specific, ministerial act, devoid of discretion).

Plaintiff cannot establish that Defendants have a clear duty to administer his naturalization oath under the facts of this case.  His first and second applications for naturalization have long been denied.  Moreover, whether an alien has adequately established that he is of good moral character and, thus, entitled to naturalization is not a purely ministerial act.  "[I]mmigration officials are vested with broad discretion in making the ultimate decision whether to grant or deny an application for naturalization . . . ." Alkenani v. Barrows, 356 F. Supp. 2d 652, No. 3:04cv1638-BD (N.D. Tex., Feb. 14, 2005); see also Sze v. INS, 1997 WL 446236 at *5-6, No. C-97-0569-SC (N.D. Cal. Jul 24, 1997) (while INS imposed on itself a 120-day window in which to complete the naturalization process, the court held that this "duty" was not a "ministerial duty" as contemplated by the mandamus statute especially in light of Congressional demand that the backgrounds of naturalization applicants be properly

investigated). Therefore, mandamus relief is unavailable.[6]

Next Plaintiff asserts that equitable estoppel should be applied as an alternative basis for judicial intervention. (Pet. at 1-2 and 10-20, and Plaintiff's Response at 1-2). Equitable estoppel applies to the federal government only in the narrowest of circumstances. Linkous v. United States, 142 F.3d 271, 277 (5th Cir. 1998). To establish equitable estoppel against the government, not only must a plaintiff show the four traditional elements of equitable estoppel, but he must also demonstrate affirmative misconduct on the part of the government. Id.[7] "Affirmative misconduct" requires an affirmative misrepresentation or affirmative concealment of a material fact by the government. Moosa v. INS, 171 F.3d 994, 1004 (5th Cir. 1999). Affirmative misconduct should not be confused with affirmative action; the government's conduct must be wrongful for it to be categorized as misconduct. Carrillo v. United States, 5 F.3d 1302, 1306 (9th Cir. 1993) (cited with approval by the Fifth Circuit in Linkous, 142 F.3d at 278 n. 3).

Plaintiff has failed to identify any affirmative misconduct on the part of the former INS. He argues that the INS unreasonably delayed in processing his application for naturalization -- an approximate thirteen-month delay from the date of filing of the second application until its disposition. (Plaintiff's Resp. at 13-14). However, mere file processing delay alone is

---

[6] The Fifth Circuit recently reaffirmed that naturalization applicants, including veteran aliens, have a continuing obligation to demonstrate good moral character in order to be naturalized. Lopez v. Henley, 2005 WL 1625006 (5th Cir. 2005).

[7] The four traditional elements of equitable estoppel are that the party to be estopped (1) was aware of the facts, and (2) intended his act or omission to be acted upon; and that the party asserting estoppel (3) did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury. Linkous, 142 F.3d at 278.

insufficient to estop the government.  INS v. Miranda, 459 U.S. 14, 18-19, 103 S. Ct. 281, 283, 74 L.Ed.2d 12 (1982); Santamaria-Ames v. I.N.S., 104 F.3d 1127, 1333 (9th Cir. 1996) (INS was not estopped from asserting that applicant for naturalization was not of good moral character by its delay in processing his file).

Lastly, Plaintiff alleges that he is a national of the United States by virtue of his permanent allegiance to the United States as evidenced by his two applications for naturalization, and the oral and written oaths that he took at the interviews/examinations on his applications for naturalization.  (Pet's Resp. at 28-31).  The question of whether or not Omari is a "national of the United States" is irrelevant to the claims which he asserts.  See 8 U.S.C. § 1101(a)(22).  This provision identifies two classes of persons who fall within the definition (1) citizens of the United States and (2) persons, *though not citizens*, who owe permanent allegiance to the United States.  In order to be a citizen a person must either have been born in the United States or born to citizens of the United States, or have been naturalized.  Since, Plaintiff was not born in this country and concededly has not been naturalized, he is not a United States citizen.  While the issue of whether he otherwise meets the alternative definition of a "national of the United States" may be material to the question of whether he may be removed from the United States, see e.g. Alwan v. Ashcroft, 388 F.3d 507, 510 (5th Cir. 2004), his status does not inform the issues raised in this action.[8]

---

[8]   In Alwan, the Court held that a "national" is not subject to deportation.  However, this issue was not discussed in the Fifth Circuit's opinion in Omari v. Gonzales, see n. 2 *supra*, and presumably was not raised in his petition for review of the BIA's decision affirming the immigration judge's order of removal.

RECOMMENDATION:

For the foregoing reasons, it is recommended that the petition for writ of mandamus and all other relief sought in this action be denied.

A copy of this recommendation will be transmitted to Plaintiff and counsel for the Defendants.

Signed this 11th day of August, 2005.

Wm. F. Sanderson, Jr.

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.